FILED
2026 Oct-19 PM 01:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOSHUA DAVID THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>KHANTEMPLATES, LLC d/b/a SHU SHOP, ADEEBA KHAN, and JASON TEMPLIN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION CASE NUMBER:<br><br>PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY |

**COMPLAINT**

Plaintiff Joshua David Thomas ("Thomas"), by and through undersigned counsel, brings this action against Defendants Khantemplates, LLC d/b/a Shu Shop ("Khantemplates"), Adeeba Khan ("Khan"), and Jason Templin ("Templin"), and alleges as follows:

## NATURE OF THE ACTION

1. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and seeks relief for Defendants' failure to pay overtime

compensation and their retaliation against Thomas for complaining about his misclassification and unpaid overtime.

2. Defendants employed Thomas at Shu Shop, a restaurant located in Birmingham, Alabama.

3. Although Defendants designated Thomas a salaried "Kitchen Manager" and "Sous Chef," his primary duty was nonexempt kitchen work, including food preparation, cooking, cleaning, washing dishes, cleaning fryers, and putting away deliveries.

4. Thomas regularly worked more than forty hours per workweek. Defendants treated him as exempt and did not pay the overtime compensation required by the FLSA.

5. After Thomas complained to ownership about his misclassification and unpaid overtime, Defendants promptly removed scheduled work, changed his reporting time on short notice, and subjected him to treatment that culminated in his constructive discharge.

6. Thomas seeks unpaid overtime compensation, liquidated damages, relief for retaliation, reasonable attorneys' fees, costs, and other appropriate relief.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1337

because this action arises under federal law regulating commerce.

8. This Court also has jurisdiction over this action pursuant to 29 U.S.C. § 216(b).

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Thomas's claims occurred in Birmingham, Alabama.

10. Assignment to the Southern Division is proper because Thomas worked at Shu Shop in Birmingham and the challenged employment practices occurred there.

11. This Court has personal jurisdiction over Defendants because they operated the Birmingham restaurant, employed Thomas there, and engaged in the conduct giving rise to this action in Alabama.

## PARTIES

12. The Plaintiff, Joshua David Thomas, is an adult resident of the State of Alabama.

13. At all times relevant to this action, Thomas was an employee within the meaning of 29 U.S.C. § 203(e).

14. Khantemplates is a limited liability company that operates the restaurant known as Shu Shop at 1820 Third Avenue North, Birmingham, Alabama

35203.

15. Khantemplates employed Thomas and was his employer within the meaning of 29 U.S.C. § 203(d).

16. Khan is an individual who, upon information and belief, was an owner and operator of Khantemplates during the relevant period.

17. Khan exercised operational control over material aspects of Thomas's employment, including his schedule and the terms and conditions of his employment.

18. Khan personally participated in discussions and correspondence concerning Thomas's compensation, his overtime complaint, changes to his schedule, and the terms of his departure.

19. Upon information and belief, Khan participated in or approved the compensation practices and employment decisions challenged in this action.

20. Templin is an individual who, upon information and belief, was an owner and operator of Khantemplates and served as Shu Shop's executive chef during the relevant period.

21. Templin supervised Thomas's kitchen work, exercised control over kitchen operations and working conditions, and exercised authority over when Thomas could report to and begin work.

22. Templin personally participated in the events following Thomas's overtime complaint, including enforcing the changed reporting time and directing Thomas to leave when he arrived at his previously scheduled time.

23. Upon information and belief, Templin participated in or approved the compensation practices and employment decisions challenged in this action.

24. Khan and Templin each acted directly or indirectly in the interest of Khantemplates in relation to Thomas and were his employers within the meaning of 29 U.S.C. § 203(d).

25. At all relevant times, Defendants acted individually and through their agents and employees concerning the matters alleged in this Complaint.

## APPLICATION OF THE FLSA

26. At all relevant times, Khantemplates operated a restaurant that employed multiple employees in preparing and serving food and beverages and performing related restaurant work.

27. During the relevant period, Khantemplates had annual gross sales made or business done of not less than $500,000, exclusive of excise taxes at the retail level that are separately stated.

28. During the relevant period, Khantemplates employed employees who handled, sold, or otherwise worked on food, beverages, restaurant

equipment, supplies, or other goods or materials that had moved in or been produced for commerce.

29. Based on the foregoing, Khantemplates was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), and Thomas's employment was covered by the FLSA.

## FACTUAL BACKGROUND

***Thomas's employment and compensation***

30. On or about January 16, 2025, Defendants offered Thomas a salaried position designated "Kitchen Manager and Sous Chef."

31. The written offer provided for gross annual compensation of $52,200 and a target workweek of forty-five hours.

32. The offer stated that, if the target workweek was regularly exceeded, Defendants would address the additional hours through additional staffing or compensation.

33. Thomas began working in the salaried position in approximately late January or early February 2025 and continued in that position until his separation in August 2025.

34. Defendants generally paid Thomas through recurring biweekly gross salary

payments of $2,007.69.

35. Defendants classified Thomas as exempt from overtime and did not pay him an overtime premium for hours worked over forty in a workweek.

***Thomas's actual duties were predominantly nonexempt***

36. Although the Defendant's job offer described managerial responsibilities, Thomas did not exercise the managerial authority contemplated by that description in actual practice.

37. Thomas's primary duty was performing the restaurant's day-to-day kitchen production and manual work.

38. His regular work included preparing food, cooking, working the kitchen pass, cleaning fryers, scrubbing cooking equipment, washing dishes, putting away deliveries, and performing other kitchen cleaning and maintenance tasks.

39. Thomas performed this work under the direction and control of ownership, including Templin.

40. Thomas did not control the restaurant's staffing or personnel decisions.

41. Thomas lacked authority to hire or fire employees, and his suggestions or recommendations concerning hiring, firing, or other changes in employee status were not given particular weight.

42. For example, Thomas asked leadership to hire a prospective employee, but ownership ultimately declined to hire that person.

43. Thomas's recommendations that other employees be discharged likewise did not result in their discharge.

44. Although Thomas was nominally assigned disciplinary responsibilities, he lacked meaningful authority in practice to compel compliance or impose effective discipline.

45. Thomas did not control the kitchen schedule or his own schedule; ownership made those decisions.

46. Thomas likewise lacked meaningful control over purchasing and ordering. When he proposed orders, Templin could disregard those proposals and make the ordering decisions himself.

47. During the months preceding his separation, Thomas repeatedly raised concerns with Khan and Templin that he was being held accountable for kitchen problems without corresponding authority over staff, scheduling, ordering, or operations.

48. Any incidental coordination or oversight Thomas performed did not change the predominantly nonmanagerial character of his actual work.

49. Thomas's primary duty was not management of the restaurant or a

customarily recognized department or subdivision, and he did not satisfy the duties requirements of the executive exemption.

50. Defendants did not employ Thomas in a bona fide executive, administrative, or professional capacity exempt from overtime under 29 U.S.C. § 213(a)(1).

***Thomas regularly worked overtime without overtime compensation***

51. Defendants' employment offer to Thomas contemplated a regular workweek exceeding forty hours.

52. During approximately the first three to four weeks of the salaried position, Thomas worked approximately sixty hours per workweek.

53. Thereafter, Thomas generally worked at least forty-five hours per workweek, sometimes more.

54. During the final weeks before his overtime complaint, Thomas's schedule included consecutive weekend shifts lasting approximately thirteen hours each.

55. Thomas clocked in and out through the restaurant's point-of-sale timekeeping system.

56. Defendants knew or should have known the hours Thomas worked because they controlled his schedule, supervised his work, and maintained or had access to his timekeeping records.

57. Despite that knowledge, Defendants did not pay Thomas overtime compensation required for his work over forty hours per workweek.

58. The precise number of overtime hours and the resulting compensation owed will be established through Defendants' records, Thomas's testimony, and other evidence.

***Thomas complained about misclassification and unpaid overtime***

59. On August 6, 2025, Thomas raised concerns with ownership that his actual duties did not support treating him as exempt and that he was entitled to overtime compensation.

60. Thomas first attempted to discuss the issue with Templin, who declined to engage in the discussion.

61. Thomas also discussed his misclassification and unpaid overtime with Khan.

62. Thomas requested that Defendants address the unpaid overtime and comply with their overtime obligations going forward.

63. Thomas also objected to being scheduled for consecutive thirteen-hour shifts and requested that he not be required to work more than forty hours per week without overtime compensation.

64. Early on August 7, 2025, Thomas sent a written follow-up to the restaurant's email address expressly identifying unpaid overtime and misclassification

under federal overtime regulations.

65. In that email, Thomas requested an opportunity to compare his estimate of unpaid overtime with Defendants' timekeeping records.

66. Defendants did not afford Thomas an opportunity to compare his estimate of unpaid overtime with Defendants' timekeeping records.

67. Later that morning, the restaurant responded that a meeting with an HR attorney had been scheduled to discuss Thomas's concerns and his employment agreement.

68. Thomas sent an additional clarification on August 7 stating that he had requested not to work consecutive thirteen-hour shifts unless absolutely necessary and not to work more than forty hours per week without overtime pay "in accordance with federal law."

69. Thomas's complaints gave Defendants clear notice that he was asserting rights to overtime compensation under the FLSA.

70. Thomas made those complaints in good faith and based on a reasonable belief that Defendants' pay practices violated the FLSA.

***Defendants' response and Thomas's separation***

71. Within approximately twenty-four hours after Thomas's August 6 complaint, his scheduled weekly hours were reduced from approximately

forty-five to approximately twenty-nine, including the removal of prep shifts.

72. Thomas's reporting time for August 7 was also changed on approximately one hour and forty minutes' notice.

73. Unaware of the changed reporting time, Thomas traveled to the restaurant and advised Templin by text that he was parking.

74. Templin informed Thomas that he was not scheduled to begin work until 4:00 p.m., referencing Thomas's conversation with Khan the previous day.

75. Because Thomas had already arrived, he entered the restaurant to clarify the situation.

76. Templin told Thomas that he could not begin work until 4:00 p.m. and repeatedly said "bye, bye, bye" in a mocking manner in the presence of another employee.

77. When Thomas stated that it appeared to be an appropriate time to give his two weeks' notice, Templin responded, "I don't care! Bye!"

78. Thomas understood the abrupt removal of scheduled work, the last-minute reporting-time change, and Templin's treatment of him as punishment for raising his overtime concerns.

79. On August 7, Thomas submitted written notice of resignation, expressly

referencing the workplace tension and reduction of his hours following the misclassification discussion.

80. Thomas also emailed Defendants to state that his hours had been reduced immediately after he raised the overtime issue and to request confirmation that the reduction was based on business needs rather than his overtime inquiry.

81. Khan responded that the schedule change had been made at Thomas's request.

82. Thomas promptly disputed that characterization, explaining that he had requested relief from consecutive thirteen-hour shifts and unpaid overtime, not removal from all prep shifts or duties.

83. Thomas remained willing to work up to forty hours per week, or forty-five hours if overtime compensation was paid.

84. Khan's response also approved use of Thomas's remaining paid time off during the notice period, stated that his regular salary would continue through August 21, and requested return of his keys.

85. On August 13, 2025, Thomas was removed from the kitchen group chat before his anticipated final active shift.

86. Thomas's employment ended in August 2025 following the notice he

submitted on August 7.

87. Thomas alleges that the abrupt removal of scheduled work and duties, the short-notice schedule change, and the public rejection of his presence immediately after his protected complaints, considered together and in context, rendered his working conditions so intolerable that a reasonable employee in his position would have felt compelled to resign.

88. Thomas's resignation therefore constituted a constructive discharge.

89. Independently of whether his resignation constitutes a constructive discharge, Thomas alleges that Defendants' post-complaint changes to his schedule and duties and their treatment of him constituted materially adverse retaliatory actions.

90. Thomas does not allege that the reduction in scheduled hours, standing alone, necessarily reduced the fixed salary paid during his notice period. He seeks recovery for the losses and injuries actually caused by Defendants' unlawful conduct, as established by the evidence.

91. Following his separation, Thomas obtained other employment but initially earned substantially less than he had earned at Shu Shop.

92. On January 30, 2026, Thomas through legal counsel sent Defendants a letter notifying them of Thomas's legal claims and their obligations to preserve

relevant evidence, including, but not limited to all point of sale system data (including Lightspeed records showing clock-in and clock-out times), Google Sheets schedules, time cards and records, schedule change notifications and communications, QuickBooks payroll data, pay stubs, personnel files, communications, security footage, and training materials.

93. Thomas has suffered lost compensation and benefits and other injuries as a result of Defendants' retaliation, in amounts to be determined at trial.

**COUNT I**
**FAILURE TO PAY OVERTIME COMPENSATION**
**29 U.S.C. § 207(a)(1) AND 216(b)**
**Against All Defendants**

94. For purposes of context, Thomas adopts and incorporates the facts set forth above.

95. At all relevant times, Thomas was a covered, nonexempt employee entitled to overtime compensation under the FLSA.

96. Defendants were Thomas's employers within the meaning of the FLSA.

97. Thomas worked more than forty hours in numerous workweeks during his employment from approximately late January or early February 2025 through August 2025.

98. Defendants suffered or permitted Thomas to perform that work and knew or should have known that he was doing so.

99. Defendants failed to compensate Thomas for his overtime work at the rate required by 29 U.S.C. § 207(a)(1).

100. Defendants' payment of a salary and use of managerial titles did not relieve them of their obligation to pay overtime compensation to a nonexempt employee.

101. Defendants knew Thomas's actual duties, controlled his work schedule, and had access to records reflecting his hours, yet treated him as exempt and failed to pay required overtime compensation.

102. Upon information and belief, Defendants knew their conduct violated the FLSA or acted with reckless disregard for whether it did, rendering their violations willful within the meaning of 29 U.S.C. § 255(a).

103. As a direct and proximate result of Defendants' violations, Thomas has been deprived of overtime compensation owed to him.

104. Pursuant to 29 U.S.C. § 216(b), Thomas seeks judgment against Defendants, jointly and severally, for unpaid overtime compensation, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs.

## COUNT II
## RETALIATION
## 29 U.S.C. § 207(a)(1) AND 216(b)
## Against All Defendants

105. For purposes of context, Thomas adopts and incorporates the facts set forth

above.

106. Thomas engaged in protected activity by making oral and written complaints to Defendants about his misclassification and unpaid overtime and by requesting payment in accordance with federal law.

107. Thomas's complaints were sufficiently clear and detailed to notify Defendants that he was asserting rights protected by the FLSA.

108. Khan and Templin knew of Thomas's protected activity before participating in the challenged post-complaint conduct.

109. Following that protected activity, Defendants subjected Thomas to materially adverse actions, including removing scheduled work and duties, abruptly changing his reporting time, and subjecting him to dismissive and humiliating treatment when he arrived at the restaurant.

110. These actions, considered individually where applicable and collectively, would dissuade a reasonable employee from asserting rights under the FLSA.

111. Defendants' retaliatory conduct culminated in Thomas's constructive discharge.

112. Defendants took the challenged actions because Thomas complained about his overtime rights and sought compliance with the FLSA.

113. The causal connection is supported by the immediate timing of the challenged actions, Templin's reference to Thomas's conversation with Khan, and the direct relationship between Thomas's overtime complaint and the ensuing changes to his work.

114. Defendants' characterization of the changes as requested by Thomas did not accurately reflect his request to avoid consecutive thirteen-hour shifts and to receive legally required overtime compensation.

115. But for Thomas's protected activity, Defendants would not have subjected him to the challenged retaliatory treatment.

116. Defendants thereby violated 29 U.S.C. § 215(a)(3).

117. As a direct and proximate result, Thomas suffered lost compensation and benefits and other injuries in amounts to be established at trial.

118. Under 29 U.S.C. § 216(b), Thomas seeks appropriate legal and equitable relief, including lost wages and benefits, an additional equal amount as liquidated damages, front pay in lieu of reinstatement where appropriate, other compensatory relief to the extent recoverable, reasonable attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua David Thomas respectfully requests that the

Court enter judgment in his favor and against Defendants and award:

A. Unpaid overtime compensation in an amount to be established at trial;

B. An additional equal amount as liquidated damages on his unpaid-overtime claim;

C. Back pay and lost employment benefits resulting from unlawful retaliation, subject to applicable offsets;

D. An additional equal amount as liquidated damages on lost wages recoverable for retaliation;

E. Front pay in lieu of reinstatement, where appropriate;

F. Compensatory damages for injuries caused by retaliation, including emotional distress, to the extent recoverable under applicable law and supported by the evidence;

G. Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

H. Prejudgment interest to the extent permitted and not duplicative of liquidated damages;

I. Postjudgment interest as provided by law; and

J. Such other legal or equitable relief as the Court deems appropriate.

Thomas seeks joint and several liability to the extent provided by the FLSA and does not seek duplicative recovery for the same injury.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Thomas demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Heather Newsom Leonard
Heather Newsom Leonard
ATTORNEY FOR PLAINTIFF

OF COUNSEL:

HEATHER LEONARD, PC
1023 Edenton Street
Birmingham, AL 35242
(205) 977-5421
Heather@HeatherLeonardPC.com

**SERVE THE DEFENDANTS VIA SPECIAL PROCESS SERVER:**

Khantemplates, LLC
c/o David C. Hickox (Registered Agent)
5613 5th Court South
Birmingham, AL 35212

Adeeba Khan
1820 3rd Avenue Nort #102
Birmingham, AL 35203

Jason Templin
1820 3rd Avenue Nort #102
Birmingham, AL 35203